The next case on the call to docket is Agenda 11-125141, Lori G. Levin v. Retirement Board of the Cook County Employees' and Officers' Annuityand Benefit Fund of Cook County. Mr. Pennelly, are you ready? Yes. Please proceed. May it please the Court, Counsel. My name is Vincent Pennelly and I represent the Retirement Board of the County Employees' and Officers' Annuityand Benefit Fund of Cook County. This case comes before you this morning on administrative review of the Board's decision to deny the plaintiff her request to participate in the health care plan for retirees being administered by the fund for the reason that she did not meet an eligibility requirement under the terms of the health care plan then in effect that her last employer be Cook County. There is no dispute that the plaintiff's last employer was not Cook County. It was the State of Illinois. The plaintiff filed an administrative review claim in the Circuit Court challenging the last Board's decision. The Appellate Court then in a split decision reversed the Circuit Court's decision. In this appeal, I'm asking you this morning to reverse the Appellate Court and affirm the Circuit Court decisions for three reasons. First of all, the Appellate Court deviated from well-established principles of statutory construction and essentially created a health care benefit in Article 9 of the Pension Code that is directly contrary to the intent of the legislature to only authorize the payment of a subsidy or health care premiums and that was only on a voluntary basis. Number two, the Appellate Court's ruling that the plaintiff has an unconditional right to participate in group health care coverage based upon the Pension Protection Clause is in direct conflict with the Appellate Court's decision in Underwood v. City of Chicago. Thirdly, the wholesale limitation imposed by the Appellate Court on the rulemaking authority of the Board is way too broad a language of Section 9202 and will ultimately have a chilling effect on the administration of all public pension funds in the state. To begin with, the facts in this case are pretty straightforward and are virtually undisputed and so you will examine those facts under two sections of the Pension Code Article 9. I'd like to just address for a minute, if I may, what standard of review you should apply since we have a disagreement on that. We have asserted that you are presented with a mixed question of law and fact that should be reviewed under the clearly erroneous standard. Conversely, the plaintiff has asserted it should be a de novo review and in fact, the Appellate Court relied on your decision in AFM Messenger to apply that standard of de novo review. However, as you are well aware, in that decision you went into a lengthy analysis of when a case presents a mixed question that should ultimately be reviewed under the clearly erroneous. And in fact, you decided in AFM that it was clearly presented with a mixed question of law and fact. The reason I think this is important is because, as you know, under a clearly erroneous standard, there is some deference that should be given to the administrative body based upon their experience in dealing with the issue before them. And as you know from the facts in this case, this fund has been administering a health care plan since 1992 when it was transferred that way. And the reason I think this is important is because under a clearly erroneous standard, there is some de novo review and in fact, responsibility by the county. So there is a history of the board administering this plan. We cited to you in our briefs a number of cases under Article 6 dealing with widow's annuities, under Article 3 dealing with policeman's annuities for active duty and what that means in which undisputed facts were then analyzed under the rule of law at issue. And the courts have said, the appellate courts and this court, that that requires an analysis under the clearly erroneous standard. So we ask you to apply that standard. However, regardless of whether you apply clearly erroneous or de novo analysis in this case, we would be overruled. Now before I get into why I say that, I just want to highlight a couple of what I think are very salient facts for your analysis. First of all, when the plaintiff joined the fund in 1980, not only was there no health care plan being administered by the fund, but there was no provision in Article 9 that even existed addressing group health care benefits. It wasn't until 1990 that the legislature enacted Section 9239. And then one year later they amended it to say that instead of a mandatory requirement that 50% of the premiums be paid by the fund, again for the health care plan being administered by the county, they amended it to say, no, it's voluntary. It's voluntary. It can be now. It's permissive. You don't have to pay any subsidy, but you may pay any amount you'd like, up to 100%. So they gave the fund that discretion to decide whether or not they want to pay any subsidy. It wasn't until February of 92 that the county then approved it. And then from that point forward it's been the fund that's been administering the plan. The final point I'd like you to keep in mind is that under the terms of the Blue Cross Blue Shield plan that the fund entered into in April of 92, when it took over the administration, the fund, by the clear language in the contract with Blue Cross Blue Shield, the fund should have full and final responsibility for the plan and its operation, including all of its terms. Finally, in June of 2009, while the plaintiff was still working for the state of Illinois, the fund formally approved a written handbook that contained the provisions regarding the health care plan. That included the last employer rule. Now, they had been following a practice and a policy before that, obviously, from 1992, but in 2009 they committed it to writing and it came to the members in a handbook. So now I'd like to move to what does that mean with respect to the plan. Article 9, which sets out the group health care benefit. Plaintiff's contention that she has an unconditional right to participate in the group health care plan misconstrues the language of that section. First and foremost, Article 9 provides almost exclusively annuities and related disability and survivor benefits for fund participants. There's not one other section in it that deals with health care benefits. There's no section that deals with health care coverage. The only section is 9239. And that section, as you know from looking at it, does not provide a specific grant that annuitants shall be entitled to participate in a plan. In enacting 239, the legislature intended only to vest the fund with the grant to create a right for the coverage itself. The term annuitant, as used in 239, serves only to set forth an initial eligibility limitation. In other words, you have to be an annuitant to participate in the subsidy if it's granted. And that makes sense, because there are other participants in the fund that are active. They're active workers. So this isn't a benefit to them. It's a benefit to the fund. The fund is going to pay part of their subsidy for their insurance plan, whatever it is they're participating in. It's limited to annuitants. And that makes sense. Next, if you look at the other sections of 9239, B, C, and D, each of them deal with a certain aspect relating only to the health care subsidy, not to a plan, not to provisions of a plan. In other words, section B says the amount of the subsidy. Section C deals with the method of collection of premiums from the annuitant. Section D deals with the handling of contributions of the health care premiums. So when you read all of these sections together, as you should, it's very clear that the intention of the annuitant is to provide a grant to the annuitant. And the intention of the legislature was simply to provide for this health care subsidy of premium payments. Plaintiff, however, wants to interpret the clause that states, quote, on behalf of each of the fund's annuitants who chooses to participate in any of the county's health care plans, and then so forth. Now, it's critical. That clause is set off by commas. Before it starts and after it ends. Well, why is that critical? Because that means that that clause was intended to modify the preceding words. Why do I say that? Okay. I say that because under the statutory construction doctrine of last antecedent doctrine, qualifying words or phrases in a statute, sort of only to modify words or phrases which are immediately preceding. And what's the language that immediately precedes that clause? It says, the fund may pay. So the only obligation it's referring to is, again, the payment of a subsidy. It is not referring to the right to have health care coverage. And that makes sense because the intent of the legislature, again, was to provide a grant to the annuitant. And the annuitant was simply to allow for this payment of the subsidy. And could they do it based upon the fact that you were a participant or not? Absolutely. It makes perfect sense. It makes sense because obviously you could have people who are participating in a non-county health care plan. A private plan, for instance. And perhaps it's a Cadillac plan. So it's very expensive. The legislature intended, though, that this subsidy would only be payable for those persons who are participating in a county plan. And that makes perfect sense. Good business sense. The plaintiff has asked you to read that clause in isolation from the other sections of 239 that deal with the subsidy and elevate it, if you will, to a right to have health care coverage from the county. We have cited to you in the briefs other instances where the legislature, in fact, did use language intending to create the right to health care coverage. And in those sections, which one example was the State Employees Group Insurance Act, it states that the purpose is to provide a program of group life insurance, a program of health care benefits, and other benefits for the persons in service of the state. And then it goes on to detail all of those coverages, different types of coverages and benefits. So that's one example. A second example that's even closer, I think, to where the legislature intends that the fund provide a health care benefit plan is Article 6, which came into existence in January of 83 to provide for a group health insurance plan for retirees. What does the language say there? There the legislature says specifically, the board shall contract to provide a health care benefit plan to provide group health insurance for all annuitants. You can't get much clearer than that. There is a mandatory requirement that the fund go out and secure a program and then administer it to all annuitants. So specifically, and then it goes on to detail again, all of the different types of coverages. Basic hospital, major medical, supplementary, prepaid preventative health care, and so forth and so on. A litany, if you will, describing the terms of that health care plan. So to sum that up, when the legislature wants to, it can be and is very clear and specific that it's intending to have the fund create a health care plan. And that simply did not happen here. It did not happen here. There's no description similar to that. The plaintiff cannot point to any language in 239 other than that clause, which I've discussed. So when you compare that to the lack of a mandate in the language of 239, it's just not appropriate for the appellate court to elevate that clause to make it a right to health care coverage. This court in the Shelton case, In re estate of Shelton, held that the appellate court's statutory analysis was contrary to established canons of statutory construction because it expanded the meaning of the word agent as used in the Illinois Health Care Power of Attorney Act. Well, that's exactly what's going on here. What the appellate court has done is taken that clause and expanded it to cover the right to health care coverage. Briefly with respect to the Underwood case, and this court is well aware of all of the litigation involving the pension protection clause, but what's clear from Underwood as well as other cases you've had before you is that the pension protection clause does not create benefits. It protects benefits that are in place by contract, which is not the case here. There's no contract at issue here between the plaintiff and the fund, or by statute. And the only statute here is 9239. As I've just indicated, that does not create a right to health care benefits. So if you were to affirm the appellate court, that's essentially what you're doing in contravention of not only Underwood, but a long line of other cases involving the pension protection clause. Briefly, now you don't even have to deal with section 9202 if, in fact, you agree that the appellate court's interpretation of section 9239 does not create a right to participate. So then you don't even really have to address 9202. But if for some reason the appellate court was correct on that, then I would submit to you that as Justice Connors elucidated in her very well-reasoned dissent in the case below, you can read 202 in harmony with 9239. It's not contrary to that. Of course, the fund has to have the ability to administer a plan. It has to have the right to set forth certain qualifications for participants in the plan. They're not spelled out in the statute. So 2202 gives a broad right to the fund to implement rules and regulations in order to do that. And we've cited to you virtually 16 other provisions of the pension code have the very same broad language allowing funds to do that. So if you find the restrictive interpretation that the appellate court applied to that language, then you're going to be hamstringing all these funds. You're going to be finding that they can't do that. One example would be disability benefits. Of course, they're applicable under various sections of the code. The statutory provisions don't say all of the eligibility requirements to be able to get disability benefits. So the funds all implement their own procedures. If you follow the appellate court's decision that a fund couldn't have a procedure or a regulation that says if you don't give us all your medical records, if you don't appear before the independent medical examiner that we need to examine you before we hear your case and grant you a benefit, that that somehow is an unconstitutional limitation or inappropriate limitation on the rulemaking authority of a pension fund. That's the type of result you could have. Okay, I see my time is over. Clint Crisloff for Lowery Levin. It's good to see you all again. Ms. Levin had wanted to be here this morning, but her retirement was delayed. She was a vested annuitant. She worked for 22 years for Cook County before she left as a vested retiree. Worked for the state for six years, and then in accordance with her rights under the statute 9239, she asked to participate in the county's retiree health care plan. The statute 9239 is very clear, as is the health care plan. The appellate court noted the fund has chosen to pay on behalf of annuitants a certain percentage of their premium. It's not a free plan. The fund pays about 60 percent of premiums right now. The statute says the fund may pay on behalf of each annuitant all or a portion of the health care premium due from each such annuitant. That was a change from the prior statute which required the fund to pay 50 percent. And so the amendment, as the appellate court pointed out, gave the fund trustees the ability to choose to gauge, if you will, the percentage of the premium that the fund would pay. Now they pay 60. Next question. What specifically in the language of that statute establishes or even purports to establish an unconditional right to participate? What are you pulling out of that statute so there's an unconditional right to participate? It says on behalf of each annuitant who chooses to participate. She's an annuitant, and as the appellate court noted, she has the right to participate. The fund having chosen to pay a portion, a percentage of the premiums, has called an across the board. Once it chooses to pay a portion, let's pay that for everybody who chooses to participate. So you don't see 9-239 speaking only to the board's ability to subsidize the participants' premiums? Well, it is the board's ability to subsidize, but they can't choose among the annuitants who they will subsidize. And in fact, the cascading... Isn't it talking about subsidizing those who are participating rather than creating a right to participate? The statute creates a right in each annuitant who chooses to participate. The right to participate. If the fund chooses not to provide, chooses not to subsidize, that's the fund's decision. But once the fund has chosen, once the trustees of the fund have chosen to subsidize a portion of the premium, they have to do it for all the annuitants who choose to participate in the plan. The last employer exclusion, beyond the unfairness that it represents, for if that's the annuitant to say, if you become a Walmart greeter or a crossing guard, you lose your health care cut, is absurd. But on a cascading basis, if you start out, the last employer restriction conflicts with the statute, 239, and it would be invalid as applied in this case to someone who retired before it was adopted. That's Matthews. It would not apply to someone who began participating before it was applied. That's Goodell. And the procedural invalidity of how this was done would mean that it really can't apply to anyone. They didn't comply with the Administrative Procedure Act in adopting this. They never adopted this exclusion. What they did is they stuck it in the handbook. Mr. Krzysztof, if Section 9-202 gives the Board the authority to make the rules and regulations to administer the fund, why shouldn't that not include the rules concerning the eligibility? Because if a person has, by statute, the right to participate, the Board limiting that right from what the person has the right to participate in the pension code is an invalid rule. When did the plaintiff acquire the right? When did she acquire the right? To participate? Yes. Or does it make any difference? Well, when she's a participant under Goodell, from whenever she becomes a participant, she has the right under the fund provides one and subsidize it, she has the right to participate in it. So when she was employed by Cook County? When she was employed by Cook County, she was a participant. They could not have adopted that during that time and had it be effective against her. But even if they did, even if it was effective then, it still wouldn't have been effective against somebody who retired before it was adopted. That's Matthews. I mean, this is a restriction that as you get down the road, you never really adopted this in any valid way. And the appellate court noted that this outside the record professing that they had a policy that this is just what they did for years. The appellate court at paragraph 27 makes it clear that there's nothing in the record to support that. Mr. Critchoff, what about the rejection letter? Didn't it mention that the plaintiff tied her 22 years of service credit as a county employee to her five years as the state employee to increase her annuity? So why is the plaintiff not eligible for health care benefits under the state retirement system by combining her years of service? Apparently, her years that she was not able to combine, she doesn't qualify for the state retirement system. I'm not exactly sure how the interplay exactly occurs, but as I understand it, everyone agrees that she was not entitled to participate in the state retiree health care plan. So the state retirement rules didn't permit her to be eligible. I believe that's correct. The other thing about this is the court delayed nine months in dealing with her We had filed a complaint. The board then asked to have it remanded to the board for them to review it. They then just sort of spun things around for nine months before they ever got around to it. We were there. They went into closed session. They didn't tell us when they came back into open session. The board has shown utter delay and disrespect to the plaintiff. But nonetheless, the bottom line here is that the statute is clear. She has a right to participate. That all annuitants of the county who choose to participate in this retiree health care plan have a right to participate. That's what we asserted when we filed the case in the beginning. That's true now. It's bad policy from the board's position as well. Because if you read the last employer restriction in the way that the board asserts it, if you were a retiree, you would want to keep paying into this plan to keep your coverage alive. Because, God forbid, you don't want to work anywhere else. You don't want to go to work as a Wal-Mart reader or a crossing guard because you lose your coverage. So you've got to keep paying for the coverage, and that means the board has to keep paying for coverage as well. That costs the board money that needn't be done. So the last employer restriction, while it is unsupportable in concept, and certainly not in this day and age when people retire and they still work because the economy is such that many people do still work. You shouldn't be disqualified from your vested benefit in the retiree health care plan by your merely going to work as a crossing guard or Wal-Mart reader or however else you choose to spend your days while you're a vested retiree. What's the significance of the amendment from 92? Oh, sure. The amendment is that the statute prior to that said that the board had to pay 50%. The board could reasonably, and the legislature would say, well, maybe we ought to be flexible in what that percentage is, because maybe the board will be in a position to pay a greater percentage, maybe less. Right now they pay 60%. What it did was it gave the board the flexibility to determine how much we're going to subsidize the premiums. But once they do that, it has to be across the board. Oh, the mention of Underwood. I keep running into Mr. Pennelly at various levels of the courts. Underwood is a different provision. The Underwood obligation, statutory obligation to provide, is before the appellate court. We're going to be arguing that on February 27. Underwood has no application here in this respect. Underwood, I believe, in many respects is the unfortunate result of the court not having oral argument on a matter of great significance. And we trust that the appellate court will figure out the obligation to provide on the Articles 5, 6, 9, and 11, I believe, that is before them. On this one, it is a different provision. This just says if the board chooses to provide a plan and to support, to subsidize it as a percentage of the premium that the people are obligated, it has to do that across the board. I believe that the court has no further questions. We ask that the court declare the board policy as invalid and remand, affirm the appellate court, find the policy invalid, remand to the circuit court for further proceedings in the case. Thank you. First of all, the fund is not required to follow the Administrative Procedures Act. That applies to state agencies. And as you are well aware, under Article 9, we are required to follow the Administrative Review Law, and that's what we do follow. Justice Garmon's point was right on point with the undisputed facts I started with, which is when Ms. Levin entered the system in 1980, that's when she acquired her rights that are protected by the Pension Protection Clause. And that's very clear. 239 didn't exist, and the fund wasn't administering or nor paying any subsidies. So really, when she entered the system, there were no rights with respect to participating in a health care plan. Justice Burke's question is also salient, because, again, I think the requirement under the State Insurance Act that she was subject to is that she had to have health insurance. And she retired before the eight years, so she was ineligible. But there, again, is a great example of a reasonable, the state has a reasonable rule and regulation in place, for whatever reason, fiscal reason, that they need to adopt and enforce. And that's what they did, just like we do here. When you get down to it, what I'm not aware of, any private sector, that is subject to health insurance. That allows you to leave your employer, which is where most people get their insurance in the private sector from their employer, to leave employment, go work somewhere else, and then be able to come back under the former employer's plan. I don't think that exists in the private sector, and I only say that by way of contrast, because it is such an example of where this doesn't even exist in the private sector. So to think that the legislature would have put it in for the public sector, where public funds are involved, just doesn't, you know, make sense. The issue of the remand counsel brought up, it took nine months. Well, you know, first of all, we had to do that to be consistent with the how decision, which the appellate court said that before there's a reviewable administrative decision, in order for the court to have jurisdiction, there has to be a final decision. That's adopted by the board, and that, unfortunately, hadn't been done here. There was letters sent to Ms. Levin telling her that they weren't going to allow her to do this. So we had to back it up, get it before the board, make sure they understood everything that was at issue, and then make a decision that was reviewable. And that, you know, takes a little bit of time, the board doesn't meet every day. Not to mention the fact that the counsel filed a class action complaint. So, you know, we're going to be facing a lot of claims, depending on the ruling in this court. So it was an important issue that needed to be dealt with, and the board took appropriate time to do that. That's all well within their rights under law to do that. The Underwood decision, in Underwood, the plaintiffs, and counsel mentioned these, counsel for those plaintiffs, asserted they had an unconditional right to health care benefits. The same argument that's being made here. And in that case, statute at issue had a subsidy provision, payment of subsidies. So it really is a very similar situation, and in Underwood, of course, the court was clear. The pension protection clause does not create benefits. It only protects the ones that are granted by contract or statute. And in Underwood, they had an agreement, settlement agreements that ended up getting codified, and they had express terms in them. So that's what the court was following. Lastly, just on the interpretation issue. There's really no need for the clause. If all that's required is you're an annuitant, and you want to participate, then why have the clause in there? It's really redundant. It adds nothing. It's superfluous. You don't need it. It just should say the fund may pay for all annuitants. That's all it should say. So why is the clause in there? Secondly, it renders subsection E totally superfluous, because in there, the legislature said, these benefits that are discussed in here are not to be constitutionally protected. So there's an express statement by the legislature about this section. So why would that section be in there? Why would it need to be in there if they were granting an unconditional right to health care benefits? So again, that section is surplusage, and under statutory construction principles, you're not supposed to render written provisions clear and unambiguous. Nobody here is disputing what the words mean in the statute. There's no ambiguity over what does may mean, what does pay mean, what does any word in there mean. It's all very clear. Finally, just in terms of the law of unintended consequences. If this court were to uphold the decision, and if it became a class action, that all these people, we have 20,000 active members, we have 17,000 retirees, and now all of a sudden everybody is going to come knocking on the door, who went to another employer and wants to be in this plan, and you have said you can do that. What is the fiscal consequence going to be to this fund? Well, I submit to you it's going to be substantial, but more importantly, that subsidy is voluntary. And if it becomes infeasible for the fund to now continue to bear the cost of that, that's going to affect all the members of the fund, not just this plaintiff, not just certain members. So we ask you to keep that in mind, and appreciate the court's time, and if there aren't any other questions, I would just ask that you affirm the decision, reverse the decision of the appellate court, and affirm the decision of the circuit court. Thank you. Thank you.